UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

LEON DOUGLAS, # 132125,

        Plaintiff,

v.

KEARA MUZZIN, et al.,

        Defendants.

Case No. 1:15-cv-41

Honorable Robert J. Jonker

**MEMORANDUM OPINION**

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is an inmate at the Thumb Correctional Facility. (ECF No. 43). This lawsuit arises out conditions of plaintiff's confinement in September and October 2012, at the Michigan Reformatory, and it stems from a dispute regarding a pair of orthopedic shoes that plaintiff says were prescribed to him as a medical accommodation. The defendants are Lieutenant Keara Muzzin, Roger Martin, and Resident Unit Manager Kerry Gobert.

Plaintiff is asserting the following claims: (1) that Muzzin and Martin violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by temporarily depriving him of the shoes; (2) that all defendants violated his rights under the Fourteenth Amendment's Due Process Clause because he did not receive a hearing on the removal of the shoes as contraband within the time limits specified by a Michigan Department of Corrections policy directive; (3) that defendant Martin violated his First Amendment rights by directing a corrections officer to issue a Class III misconduct charge against plaintiff for possession of contraband; and (4) that all defendants violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act

(RA). Plaintiff sues defendants in their individual and official capacities and seeks declaratory and injunctive relief, as well as punitive and compensatory damages.[1]

The matter is now before the Court on defendants' Rule 12(b)(6) motion to dismiss. Plaintiff has stated two claims that survive Rule 12(b)(6): 1) official capacity claims for compensatory damages under the ADA and RA; and 2) a personal capacity claim against Muzzin and Martin for deprivation of a medically prescribed pair of shoes. All other claims are subject to dismissal.

### Rule 12(b)(6) Standards

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2)). While this notice pleading standard does not require detailed factual allegations, it does require more than labels and the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, [plaintiff]

---

[1] All other claims have been dismissed. (ECF No. 13, 14).

must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In deciding motions to dismiss under Rule 12(b)(6), the Court is generally limited to examination of the complaint. The Court may also take into account exhibits attached to the complaint. *See* FED. R. CIV. P. 10(c).

## **Qualified Immunity**

Defendants argue that they are entitled to dismissal of plaintiff's claims against them on the basis of qualified immunity. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of

the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Ziglar v. Abbasi,* 137 S. Ct. 1873, 1867 (2017) ("If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability.") (quotation and citation omitted); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established

law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552. In order to be clearly established, existing precedent must have placed the unlawfulness of the official's conduct "beyond debate." *Plumhoff*, 134 S. Ct. at 2023.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Estate of Hill v. Miracle*, 853 F.3d at 312 ("[T]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.") (quotation and citation omitted). The burden applies to each claim that the plaintiff is asserting against a defendant. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

**Plaintiff's Allegations**

Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. He is currently an inmate at the Thumb Correctional Facility. (ECF No. 43). During the period at issue, September and October 2012, plaintiff was an inmate at the Michigan Reformatory (RMI). (Compl. ¶ 1, ECF No. 1, PageID.6).[2] Plaintiff named three MDOC employees at RMI as defendants: Lieutenant Keara Muzzin, Lieutenant Roger Martin and Resident Unit Manager (RUM) Kerry Gobert. (*Id.* at ¶¶ 2-3, 10, 20, PageID.6-7).

---

[2]Unless otherwise specified, all the citations in this section are to ECF No. 1, plaintiff's complaint and the attached documents.

Plaintiff alleges that someone had prescribed orthopedic shoes for him.³ (*Id.* at ¶ 2, PageID.6). On September 23, 2012, plaintiff "was called out for a visit." (*Id.*). Plaintiff is "a diabetic, has polio, and suffers from neuropathy in his feet." (*Id.* at ¶ 4, PageID.6). He had a special medical accommodation that allowed him to wear shoes other than state issued shoes during visits. He alleges that he showed Lieutenant Muzzin his accommodation for orthopedic shoes. Defendant Muzzin allegedly gave plaintiff a choice to either wear a pair of "black state oxfords" or go without this visit. Plaintiff elected to wear the shoes that Lieutenant Muzzin provided and plaintiff met with his unidentified visitor. Plaintiff alleges that he experienced some pain and discomfort and elected to terminate this visit. (*Id.* at ¶¶ 4-9, PageID.6).

Plaintiff went to RMI's control room where he encountered Lieutenant Martin. Plaintiff demanded his orthopedic shoes. Defendant Martin declined to provide plaintiff with the shoes. Plaintiff then took off the shoes that he was wearing and informed Martin that they were uncomfortable. Plaintiff alleges that Lieutenant Martin ordered him to hand over the unsatisfactory shoes and return to his cell in his bare feet. Plaintiff complied with the order, but found that the housing unit's concrete floor felt cold and damp against his bare feet. (*Id.* at ¶¶ 10-15, PageID.6-7).

On or about September 24, 2012, Corrections Officer Schlosstein served plaintiff with a Class III misconduct ticket for possession of contraband (a pair of shoes that were not authorized

---

³The Court notes that the dates on the documents that plaintiff attached to his complaint generally fall far outside the period at issue (ECF No. 1, PageID.16-17, 19-20, 22), or they are illegible (*Id.* at PageID.15, 18, 21). Accordingly, the exhibits do not establish the existence of any special medical accommodation during the period at issue. Plaintiff's factual allegations must be taken as true in the Rule 12(b)(6) context, however, and all reasonable inferences must be drawn in his favor. *See Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). Accordingly, the Court has inferred that a medical care provider had approved a special medical accommodation for plaintiff regarding shoes, and that it remained in effect during the September and October 2012 time frame.

under a medical detail) and contraband removal record for "1 pair of black dress oxford shoes." (*Id.* at ¶ 17, PageID.7; Contraband Removal Record, PageID.13; Class III Misconduct Report, *Id.* at PageID.14). According to plaintiff, Officer Schlosstein told him that Lieutenant Martin had instructed Schlosstein to write the Class III misconduct ticket. (Compl. at ¶ 18, PageID.7). Plaintiff has not alleged the outcome of the misconduct charge or that he suffered any adverse consequences stemming from this misconduct charge. (*Id.* at ¶¶ 18-38, PageID.7-10).

Plaintiff filed a grievance complaining that RUM Gobert had failed to conduct a timely hearing on the contraband removal. (*Id.* at PageID.30). He stated that, on September 23, 2012, defendants took his shoes and he received a contraband removal slip. (*Id.*). The Step I response to plaintiff's grievance is not legible. (*Id.*). In his Step II appeal, plaintiff conceded that his shoes "were given back." (*Id.* at PageID.32). The Step II response likewise noted that plaintiff's shoes had been returned. (*Id.* at PageID.31). The warden observed that MDOC's policy directive 04.07.112 had not been followed. "A Notice of Intent was not prepared, nor was an administrative hearing held regarding the Contraband removal slip that was written on 9/23/12[.]" (*Id.*). The warden related that action had been taken to prevent a similar situation from happening again. Plaintiff's grievance was denied at Step II and the denial was upheld at Step III. (*Id.* at PageID.31-33).

## Discussion

### I. Mootness of Declaratory and Injunctive Relief Claims

Plaintiff is an inmate at the Thumb Correctional Facility. (ECF No. 43). Defendants are employed at the Michigan Reformatory. Defendants no longer have any authority over the conditions of plaintiff's confinement. In addition, plaintiff concedes that, within 45 days, his shoes were returned to him. (ECF No. 29, PageID.178). The Court finds that plaintiff's requests for

declaratory and injunctive relief are therefore moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

## II. Official Capacity Damage Claims

### A. Eleventh Amendment Immunity

Plaintiff's claims for damages against defendants in their official capacities for alleged violations of his First, Eighth, and Fourteenth Amendment rights are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).

### B. ADA and RA Claims

The Eleventh Amendment does not bar the ADA and RA claims, but defendants argue they should be granted qualified immunity on both claims "regardless of whether they are sued in their individual or official capacities[.]" (Defendants' Brief at 6, ECF No. 24, PageID.107). This argument fails as to the official capacity claims. "Qualified immunity is a personal defense that applies only to government officials in their individual capacities." *Benison v. Ross*, 765 F.3d 649, 665 (6th Cir. 2014). Qualified immunity is "not available to government officials defending against suit in their official capacities." *Id.*

Defendants persist in the same vein when they argue: "[I]t does not matter that Defendants are also sued in their official capacities, because none of them is an 'employer.' '[T]he ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employers or managers of these organizations." (Defendants' Brief at 5, ECF No. 24, PageID.106) (citing *Williams v. McLemore*, 247 F. App'x 1 (6th Cir. 2007) and *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009)). Defendants' argument is meritless.

In *Williams v. McLemore*, the Sixth Circuit carefully explained that, under Title II of the ADA, the appropriate defendant is a state official sued in his official capacity because that official serves as a proxy for the "public entity." 247 F. App'x at 8. The Sixth Circuit went on to explain that when the plaintiff filed his amended pleading, which eliminated his ADA claims for damages against the defendants in their official capacities and restricted his pleading to claims against the defendants in their individual capacities, his pleading no longer stated a claim under Title II of the ADA upon which relief could be granted. *Id.* at 8-9.

Finally, defendants make a passing argument that plaintiff's complaint fails to state a claim against them because "the defendant must also receive federal funds to establish a claim under the Rehabilitation Act." (Defendants' Brief at 6, ECF No. 24, PageID.107). The issue is not whether the individual defendants receive federal funds; it is whether the MDOC receives federal funds. Defendants offer no argument claiming that the MDOC does not receive federal funds. Further, MDOC employees sued under the RA in their official capacities typically concede that the MDOC receives federal funds. *See, e.g.*, *Tanny v. Boles*, 400 F. Supp. 2d 1027, 1047 (E.D. Mich. 2005). States waive sovereign immunity for claims under the RA when they accept federal funds. *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002). "The Court will presume, at this stage

of proceedings, that the State of Michigan receives federal funds for the operation of its prisons, including [RMI], and that it is not immune from [p]laintiff's claims under the RA." *Brown v. Prelesnik*, No. 1:12-cv-873, 2013 WL 838289, at *17 (W.D. Mich. Mar. 6, 2013).

The RA and Title II of the ADA do not authorize punitive damages. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Plaintiff's claims for punitive damages under Title II of the ADA and the RA are subject to dismissal under 28 U.S.C. § 1915(e)(2). Only Plaintiff's compensatory damage claims under these statutes survive.

### III. Individual Capacity Claims Under the ADA and RA

Defendants are entitled to dismissal of plaintiff's claims against them in their individual capacities under the ADA and RA. (ECF No. 24, PageID.106). "Title II of the ADA does not . . . provide for suit against a public official in his individual capacity." *Everson*, 556 F.3d at 501 n. 7; *see also Williams v. McLemore*, 247 F. App'x at 8 ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities."). It is also well-established that public employees may not be sued in their individual capacity under the RA. *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Gohl ex rel. J.G. v. Livonia Pub. Sch.*, 134 F. Supp. 2d 1066, 1072-73 (E.D. Mich. 2015).

### IV. Qualified Immunity on Individual Capacity Constitutional Claims

Defendants seek qualified immunity on plaintiff's First, Eighth, and Fourteenth Amendment claims for damages against them in their individual capacities. Defendants have not contested the Court's determination on initial screening that plaintiff alleged facts sufficient to state a claim. (Defendants' Brief at 4, ECF No. 24, PageID.105). Defendants' Rule 12(b)(6) motion is based on

the "second prong" of the qualified immunity analysis: "whether the right was clearly established at the time of the defendant[s'] alleged misconduct." *Pearson v. Callahan*, 555 U.S. at 232.

The burden of convincing a court that the law was clearly established rests squarely with the plaintiff. The burden applies to each claim that the plaintiff is asserting against a defendant. *See Johnson v. Moseley*, 790 F.3d at 653. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. [It does] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. at 308 (citations and quotations omitted).

### A. Medically Prescribed Shoes

Defendants contend plaintiff has not met his burden of establishing a "clearly established right" regarding his orthopedic shoes. The Court disagrees. The Supreme Court has held that "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" can establish a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). This is precisely what Plaintiff has alleged. The Supreme Court's decision predates the complained of actions by a number of years. Thus it cannot be said the right was not clearly established. Finally, Plaintiff has made allegations that are sufficient, if believed, to indicate that Muzzin and Martin's actions were unreasonable in light of the clearly established right. Accordingly, Defendants' motion to dismiss will be denied as to this claim.

*B. Other Constitutional Claims*

Plaintiff did not address his burden with regard to his First and Fourteenth Amendment claims. He did not carry his burden regarding qualified immunity by ignoring it. *See, e.g.*, *Schuler v. Village of Newcomerstown*, No. 5:16-cv-1466, 2017 WL 1199170, at *10 (N.D. Ohio Mar. 31, 2017) (A bare statement "with no citation to authority" is insufficient to carry the plaintiff's burden with respect to the second prong of the qualified immunity analysis.); *Shaw v. City of Riverview*, No. 16-11693, 2017 WL 914245, at *9 (E.D. Mich. Mar. 8, 2017) ("Plaintiff needs to direct the Court to a case wherein a similar legal and factual scenario was found to have resulted in a constitutional violation," but here, plaintiff "has not even attempted to identify such a case.").

The Court has been unable to locate a case finding a Fourteenth Amendment violation under similar circumstances. Moreover, Plaintiff's Due Process Clause claims arguably should have been dismissed earlier because they were subject to the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. Plaintiff did not plead the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir.1995). Plaintiff succeeded in having his shoes returned through his available state post-deprivation remedies.

A Class III misconduct charge issued by a corrections officer under the direction of defendant Martin was the alleged "adverse action" supporting plaintiff's First Amendment retaliation claim. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The recent decision in

*Roden v. Hansen* is persuasive. 2:17-cv-9, 2017 WL 3205765 (W.D. Mich. July 28, 2017). In *Roden*, Judge Gordon Quist held that a Class III misconduct cannot support a First Amendment retaliation claim because the possible sanctions that a prisoner can receive as the result of a Class III misconduct conviction are not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. *Id.* at *3-4. Judge Quist's decision was the first time this issue was addressed in the Western District of Michigan. Plaintiff has not shown that the law was clearly established in 2012 when defendant Martin acted.

Defendants are entitled to qualified immunity on plaintiff's First and Fourteenth Amendment claims seeking an award of damages against defendants in their individual capacities.

## Conclusion

Plaintiff's official capacity claims for compensatory damages under the ADA and RA survive Rule 12(b)(6). So does Plaintiff's individual capacity claim against Muzzin and Morris for deprivation of a medically prescribed accommodation. Of course, if the facts developed in discovery fail to sustain Plaintiff's allegations that the shoes were a medically prescribed accommodation, this claim may not survive Rule 56. All other claims are subject to dismissal.


Dated:   September 28, 2017              /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE