UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L<small>EON</small> D<small>OUGLAS</small>,

        Plaintiff,                            Hon. Robert J. Jonker

v.                                             Case No. 1:15-cv-41

K<small>EARA</small> M<small>UZZIN</small>, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 131). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted and this matter terminated.

**BACKGROUND**

Plaintiff is currently incarcerated at the Kinross Correctional Facility, but the events giving rise to this action occurred while Plaintiff was incarcerated at the Michigan Reformatory (RMI). Plaintiff initiated this action against four RMI employees: (1) Warden Carmen Palmer; (2) Lieutenant Keara Muzzin; (3) Lieutenant Rodger Martin; and (4) Resident Unit Manager Kerry Gobert. (ECF No. 1). Plaintiff's claims against Warden Palmer were dismissed on screening. (ECF No. 13-14). With respect to the remaining Defendants, Plaintiff alleges the following.

-1-

On September 22, 2012, Plaintiff was called out to meet with a visitor, however, when he arrived at the visiting room Defendant Muzzin refused Plaintiff entry. Muzzin explained to Plaintiff that because he was wearing orthopedic shoes without a proper accommodation, he would not be permitted entrance into the visiting room. Plaintiff explained to Muzzin that he suffered from polio and diabetic neuropathy for which he had been provided an accommodation to wear the shoes in question "on visits and any other time of day." Plaintiff provided a copy of this accommodation, but Muzzin refused to honor such. Instead, Muzzin offered Plaintiff a choice: (1) wear a pair of state-issued oxford shoes; or (2) "go without his visit." Plaintiff opted to wear a pair of state-issued oxford shoes, but was forced to terminate his visit prior to its completion due to the pain he was experiencing from wearing improper footwear.

After terminating his visit, Plaintiff proceeded to the control center to retrieve his medically-prescribed shoes. Defendant Martin, however, informed Plaintiff that "he could not have his prescription shoes." Plaintiff responded that he could not wear the state-issued oxford shoes because they caused pain and discomfort. Defendant Martin responded by ordering Plaintiff to surrender the oxford shoes and return to his cell in his bare feet. Two days later, Plaintiff's medically-prescribed shoes were officially confiscated and Plaintiff was charged with a misconduct violation for possessing contraband. Plaintiff attempted, without success, to obtain the return of his prescribed shoes, but Defendant Gobert refused to conduct a hearing regarding the matter. Plaintiff's medically-prescribed shoes were eventually returned to Plaintiff, although the

date that such occurred is not clear from Plaintiff's complaint.  In his response to the present motion, Plaintiff asserts that his shoes were returned to him after 45 days.

Plaintiff asserted various claims against Defendants Muzzin, Martin, and Gobert, but at this juncture the only claims remaining in this matter are Plaintiff's claims asserted under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) for compensatory damages.  Defendants Muzzin, Martin, and Gobert now move for summary judgment.  Plaintiff has responded to Defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*,

440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

Defendants advance two primary arguments in their motion. First, Defendants assert that Plaintiff cannot establish that he suffered a violation of his rights under the ADA or RA. Second, Defendants argue that even if Plaintiff could establish such a violation, they are entitled to sovereign immunity as to any such claims. Because the

Court finds that Plaintiff cannot establish that his rights under the ADA or RA were violated, the Court need not address the more difficult question of sovereign immunity.

Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." *Jones*, 341 F.3d at 477 (quoting 42 U.S.C. § 12131).

The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). Claims asserted under the RA are analyzed similarly to claims asserted under the ADA. *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (en banc) ("[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act").

-5-

To prevail on a claim under Title II of the ADA, Plaintiff must establish: (1) he is a qualified person with a disability; (2) defendant is subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendant, by reason of his disability. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

Because Plaintiff is seeking monetary damages, he must further demonstrate that defendant acted with "deliberate indifference." *See, e.g., R.K. ex rel. J.K. v. Board of Education of Scott County, Kentucky*, 637 Fed. Appx. 922, 925 (6th Cir., Feb. 5, 2016); *Updike v. Multnomah County*, 870 F.3d 939, 949-51 (9th Cir. 2017). In this context, a party acts with deliberate indifference if it "disregards a known or obvious consequence of its actions, namely that its actions will violate the plaintiff's federally-protected rights." *R.K. ex rel. J.K.*, 637 Fed. Appx. at 925. Deliberate indifference is not established by action that is merely negligent, rather Plaintiff must establish that Defendant acted with "deliberateness." *Updike*, 870 F.3d at 950-51. Before addressing the specifics of Plaintiff's remaining claims, some background is necessary.

A.   Plaintiff's Medical Accommodations

Plaintiff was diagnosed with polio in 1958, and he suffers a "severe deformation" of his left foot. (ECF No. 85, PageID.502). Plaintiff was incarcerated with the Michigan Department of Corrections in 1972. (*Id.*). Treatment notes dated, March 19, 1991, indicate that Plaintiff was permitted to wear shoes purchased by his family from an approved vendor. (ECF No. 85, PageID.518). A treatment note dated October 28,

1994, indicates that Plaintiff was authorized to wear his "own shoes to [the] visiting room." (ECF No. 85, PageID.520). The "expiration date" of this accommodation was identified as "indefinite." (*Id.*).

On or about September 18, 1998, Plaintiff was issued a Medical Detail permitting him to wear a "prescription shoe" even "on visits." (ECF No. 1, PageID.17). This Medical Detail did not indicate a termination date for this accommodation. (*Id.*). On January 24, 2001, Plaintiff was issued a Special Accommodation Notice indicating that he was permitted to wear "orthopedic" shoes. (ECF No. 1, PageID.19). This Notice, however, neither authorized Plaintiff to wear his orthopedic shoes on visits nor indicated the date on which this accommodation terminated. (*Id.*). On April 15, 2003, Plaintiff was issued a Special Accommodation Notice indicating that he was permitted to wear "orthopedic" shoes. (ECF No. 1, PageID.20). While this Notice did not authorize Plaintiff to wear his orthopedic shoes on visits, it did indicate that this accommodation was "perm[anent]." (*Id.*).

Treatment notes dated September 16, 2010, and September 13, 2011, indicate that Plaintiff was permitted to wear an "orthotic shoe." (ECF No. 1, PageID.22; ECF No. 132 at PageID.787). Again, these Notices neither authorized Plaintiff to wear his orthopedic shoes on visits nor indicated the date on which this accommodation terminated. (*Id.*). Treatment notes dated, September 19, 2012, four days before the incident giving rise to this action, indicate that Plaintiff no longer had an accommodation for orthopedic or athletic footwear. (ECF No. 132, PageID.790). Treatment notes dated, September 26,

2012, three days after the incident giving rise to this action, likewise indicates that Plaintiff did not have an accommodation for orthopedic or athletic footwear. (ECF No. 132 at PageID.791). On December 20, 2012, Plaintiff was again provided an accommodation to wear an "orthotic" shoe. (ECF No. 132, PageID.792).

The Court does not necessarily disagree with Plaintiff that "[o]ne does not heal from a polio affliction" and therefore, his disability and need for prescription shoes is likely permanent. Nevertheless, there is no dispute, on the present record, that medical treatment notes, dated only days before and days after the events giving rise to this action, reflected that Plaintiff was not authorized to wear any special footwear.

B.     Relevant MDOC Policy Directives

Policy Directive 04.07.110 articulates the "state-issued" items to be provided to inmates. Policy Directive 04.07.112 details the additional personal property items that prisoners are authorized to possess. Neither party has provided the Court with a copy of Policy Directive 04.07.110. Accordingly, the Court has, included a copy of this Policy Directive as Appendix A to this Report and Recommendation.

As for Policy Directive 04.07.112, both parties have submitted material, but neither submission constitutes a complete version of the Policy that was in effect as of September 23, 2012. Plaintiff has submitted a version of the Policy that took effect on September 1, 2019. (ECF No. 142, PageID.864-88). While Defendants have submitted a copy of the appropriate version of this Policy, they failed to include the Attachments

thereto. Accordingly, the Court has, included a copy of the Policy Directive, including Attachments, as Appendix B to this Report and Recommendation.

As of September 23, 2012, Plaintiff was issued one pair of state-issued shoes. MDOC Policy Directive, 04.07.110 ¶ I (eff. Feb. 6, 2012). Plaintiff was also permitted to purchase and possess three additional pairs of shoes. MDOC Policy Directive, 04.07.112, Att. C ¶ 5 (eff. Mar. 21, 2011). But the Policy also expressly provides that "personal footwear shall not be worn on visits . . ." (*Id.*). Accordingly, the only shoes Plaintiff was permitted to wear during visitation were: (1) state-issued shoes; or (2) shoes for which he possessed a valid medical accommodation. Before assessing the claims asserted against each Defendant, two additional matters must be briefly addressed.

First, Policy Directive 04.07.112 articulates the additional personal property items which inmates are permitted to possess. The amount of additional property an inmate is permitted to possess, however, depends on his security level. Implicit in Plaintiff's argument is that he was a security level II prisoner as of September 23, 2012. While Defendant does not appear to contest such, the Court notes that Plaintiff has presented no evidence that such was, in fact, the case. While Plaintiff has submitted evidence that he is presently a security level II prisoner (ECF No. 142, PageID.890), such is silent as to Plaintiff's security level on the date in question. Nevertheless, the Court has assumed for present purposes that Plaintiff was a security level II prisoner on September 23, 2012.

Second, it is well understood that only admissible evidence man be considered when resolving a motion for summary judgment. *See, e.g., Bluegrass Dutch Trust Morehead, LLC v. Rowan County Fiscal Court*, 734 Fed. Appx. 322, 327 (6th Cir., May 10, 2018). The proffered evidence, however, "need not be in admissible form [merely] its content must be admissible." *McGuire v. Michigan Department of Community Health*, 526 Fed. Appx. 494, 496 (6th Cir., May 9, 2013). In support of their motion, Defendants have submitted an affidavit signed by Kelly Melle, an MDOC Communication and Litigation Specialist. (ECF No. 132-5, PageID.794-800). This affidavit, however, is not properly executed. (ECF No. 132-5, PageID.798). Melle does not appear to have any first-hand knowledge of the events giving rise to this action. Instead, Melle appears to have merely reviewed Plaintiff's medical and prison records and opined about such, often in conditional terms. Given that Plaintiff's medical and prison records, in effect, speak for themselves and Melle appears to lack any first-hand knowledge of the matters in question, the Court has disregarded his affidavit. The Court notes, however, that even were it to consider Melle's affidavit, it would not alter the resolution of Defendants' motion. With this backdrop established, the Court can turn to Plaintiff's remaining claims.

C.   Defendant Muzzin

Plaintiff alleges that Muzzin improperly confiscated his shoes prior to his visit on September 23, 2012. In her discovery responses, Defendant Muzzin asserted that she confiscated Plaintiff's shoes because Plaintiff was attempting to wear "personal shoes."

(ECF No. 132, PageID.762).   Muzzin conceded that Plaintiff would have been permitted to wear orthopedic shoes to his visit, but only if he had a valid medical accommodation for such.  (*Id.*, PageID.764).  As Defendant Muzzin notes, however, Plaintiff did not have a valid medical accommodation for non-state issued shoes.  (*Id.*, PageID.767).  As previously discussed, treatment notes reveal that Plaintiff did not, as of September 23, 2012, possess a medical accommodation to wear anything other than state-issued shoes to visitation.  Because Plaintiff did not have any such accommodation, Defendant Muzzin could not have violated Plaintiff's rights under the ADA or RA by confiscating his personal shoes.

Plaintiff counters that despite what the MDOC's records indicate, the conclusion that he did not have a valid medical accommodation was mistaken and had Defendant Muzzin only contacted healthcare, as MDOC Policy requires, she would have been informed that such was the case.  Even if the Court assumes that the MDOC records, on the date in question, were inaccurate, Plaintiff has presented no evidence supporting his argument that healthcare personnel were aware that such was the case and would have communicated such to Defendant Muzzin.  In sum, Plaintiff has failed to demonstrate the existence of a genuine factual dispute on the question whether Defendant Muzzin violated his rights under the ADA or the RA.  Accordingly, the undersigned recommends that Defendant Muzzin's motion for summary judgment be granted.

D.     Defendant Martin

Plaintiff alleges that immediately following his visit on September 23, 2012, Martin refused to return his personal shoes.  As discussed immediately above, however, Plaintiff did not have a valid medical accommodation to wear the shoes in question. Because Plaintiff did not have any such accommodation, Defendant Martin could not have violated Plaintiff's rights under the ADA or RA by failing to return Plaintiff's personal shoes.  Plaintiff has failed to demonstrate the existence of a genuine factual dispute on the question whether Defendant Martin violated his rights under the ADA or the RA.  Accordingly, the undersigned recommends that Defendant Martin's motion for summary judgment be granted.

E.     Defendant Gobert

Following Defendant Martin's refusal to return Plaintiff's personal shoes, Plaintiff began pursuing administrative relief.  According to Plaintiff, because his confiscated shoes were characterized as contraband, prison officials were required to conduct an administrative hearing regarding the matter.  Plaintiff's claim against Defendant Gobert is that Gobert did not conduct this required administrative hearing in a timely manner.  Even if the Court assumes that Gobert was required to conduct an administrative hearing and, furthermore, that such was not conducted in a timely manner, Plaintiff has presented absolutely no evidence that Gobert's failure in this regard was *because of* Plaintiff's disability.  This is fatal to Plaintiff's ADA and RA

claims. Accordingly, the undersigned recommends that Defendant Gobert's motion for summary judgment be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 131) be granted and this matter terminated. For the same reasons the undersigned recommends that Defendants' motion be granted, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: July 7, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge