UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON DOUGLAS #132125,

        Plaintiff,

v.

KEARA MUZZIN, et al.,

        Defendants.

_____/

Hon. Robert J. Jonker

Case No. 1:15-cv-41

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment.
(ECF No. 131).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that
Defendants' motion be granted in part and denied in part, and that this matter be
terminated.

## BACKGROUND

Plaintiff is currently incarcerated at the Kinross Correctional Facility, but the
events giving rise to this action occurred while Plaintiff was incarcerated at the Michigan
Reformatory (RMI).   Plaintiff initiated this action against four RMI employees:
(1) Warden Carmen Palmer; (2) Lieutenant Keara Muzzin; (3) Lieutenant Rodger
Martin; and (4) Resident Unit Manager Kerry Gobert.   (ECF No. 1).   Plaintiff's claims
against Warden Palmer were dismissed on screening.   (ECF No. 13-14).   With respect
to the remaining Defendants, Plaintiff alleges the following.

On September 22, 2012, Plaintiff was called out to meet with a visitor, but, when he arrived at the visiting room, Defendant Muzzin refused Plaintiff entry.   Muzzin explained to Plaintiff that, because he was wearing orthopedic shoes without a proper accommodation, he would not be permitted entrance into the visiting room.   Plaintiff explained to Muzzin that he suffered from polio and diabetic neuropathy for which he had been provided an accommodation to wear the shoes in question "on visits and any other time of day."   Plaintiff provided a copy of this accommodation, but Muzzin refused to honor it.   Instead, Muzzin offered Plaintiff a choice: (1) wear a pair of state-issued oxford shoes; or (2) "go without his visit."   Plaintiff opted to wear a pair of state-issued oxford shoes, but was forced to end his visit early due to the pain he was experiencing from wearing improper footwear.

After terminating his visit, Plaintiff went to the control center to retrieve his medically-prescribed shoes.   Defendant Martin informed Plaintiff that "he could not have his prescription shoes."   Plaintiff responded that he could not wear the state-issued oxford shoes because they caused pain and discomfort.   Defendant Martin ordered Plaintiff to surrender the oxford shoes and return to his cell in his bare feet.   Two days later, Plaintiff's medically-prescribed shoes were officially confiscated and Plaintiff was charged with a misconduct violation for possessing contraband.   Plaintiff attempted to obtain the return of his prescribed shoes, but Defendant Gobert refused to conduct a hearing regarding the matter.   Plaintiff's medically-prescribed shoes were eventually returned to Plaintiff, although the date of return is not clear from the complaint.   In his

response to the present motion, Plaintiff asserts that his shoes were returned to him after 45 days.

Plaintiff asserted various claims against Defendants Muzzin, Martin, and Gobert, but at this juncture the only claims remaining in this matter are Plaintiff's official capacity claims asserted under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) for compensatory damages.  Defendants Muzzin, Martin, and Gobert have moved for summary judgment.

In their motion for summary judgment, Defendants advance several arguments. Defendants first argue that they are entitled to summary judgment on the merits of Plaintiff's remaining claims.  Second, Defendants contend that sovereign immunity precludes Plaintiff from recovering monetary damages on his remaining ADA claims. Finally, Defendants argue that Plaintiff cannot recover monetary damages on his ADA and RA claims due to his failure to establish that they acted with deliberate indifference.

On July 7, 2020, the undersigned recommended that Defendants' motion be granted and this matter terminated.  (ECF No. 146).  Finding that Defendants had demonstrated the absence of a genuine factual dispute on the merits of Plaintiff's remaining claims, the undersigned concluded that Defendants were entitled to summary judgment.  Having made this determination, the undersigned declined to address Defendants' other arguments.

On December 2, 2020, the Honorable Robert J. Jonker issued an Order dismissing without prejudice the aforementioned Report and Recommendation, and remanding the matter to the undersigned for further consideration and analysis.   (ECF No. 151).   In his Order, Judge Jonker correctly observed:

> Treatment notes immediately before and after September 22, 2012 are certainly part of the picture that supports the defense view.   But the record also contains other evidence that, at least on first blush, might suggest a reasonable fact finder could still infer that Plaintiff actually had a special accommodation at the time of the visit, regardless of whether particular treatment notes reflected it, and that defendants were wrong to conclude otherwise.   Plaintiff swears he had an obvious and well-known foot deformity, and that throughout a lengthy period of incarceration he experienced no problems using his orthopedic shoes, until this one time.   One might expect that a correctional officer confronting an individual with a history of obvious and permanent foot deformity, and a long history of wearing special shoes would at least perform a follow up inquiry on the matter before looking at treatment notes alone.   At least a reasonable jury might conclude as much.

(*Id.*, PageID.982).

The undersigned finds these observations to be well taken.   Accordingly, additional analysis is necessary regarding whether the admissible evidence presented to this Court, interpreted in Plaintiff's favor, reasonably supports the inference that Defendants knew or should have known that Plaintiff had or required a medical accommodation as of September 22, 2012.   It is also necessary to address the merits of Defendants' other arguments.

-4-

## <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).   Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.   In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## **ANALYSIS**

### I.  **Sovereign Immunity**

Plaintiff's ADA claims are asserted under Title II of the ADA, which provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132). Because the remaining Defendants are being sued in their official capacity, Plaintiff's ADA claims are, for all practical purposes, asserted against the State of Michigan.   *See Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010).   Defendants argue that the

Eleventh Amendment precludes Plaintiff from obtaining monetary damages on his remaining ADA claims.[1]

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States."  *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000).  Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court.  *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)).

It is well understood that Congress can abrogate the States' Eleventh Amendment immunity when enacting legislation.  *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  When questions arise whether Congress has abrogated the States' immunity in any particular circumstance, courts undertake a two-step analysis: (1) has Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity, and (2) did Congress act pursuant to a valid grant of constitutional authority.  *Ibid.*  When enacting the ADA, Congress explicitly expressed its intent to abrogate the

---

[1] Defendants have not argued that Plaintiff's claims for monetary damages on his remaining Rehabilitation Act (RA) claims are barred by the Eleventh Amendment.

States' sovereign immunity.   *Id.* at 518.   Resolution of the latter question, however, has been more difficult.

As the Supreme Court has observed, Congress can validly abrogate the States' Eleventh Amendment immunity "when it does so pursuant to a valid exercise of power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment."   *Lane*, 541 U.S. at 519.   Applying this standard, the Court has on several occasions been asked to examine whether Congress' purported abrogation of sovereign immunity was valid with respect to a particular type of ADA claim.

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Court held that Congress, in enacting Title I of the ADA, exceeded its constitutional authority by purporting to abrogate the State's Eleventh Amendment immunity from suits for money damages.   *Id.* at 363-74.   With respect to Title II of the ADA, the analysis is more muddled.   As courts recognize, "Congress's attempted abrogation is only valid in limited circumstances, depending on the nature of the ADA claim." *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016) (citing *Garrett*, 531 U.S. at 374).

In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Court held that Congress validly abrogated the States' sovereign immunity as to claims under Title II of the ADA, which seek to vindicate the right of access to the courts.   *Id.* at 518-31.   In *United States v. Georgia*, 546 U.S. 151 (2006), the Court held that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates

the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159 (emphasis in original).

Accordingly, if a claim asserted under Title II of the ADA alleges conduct that would constitute a violation of both the ADA and the Fourteenth Amendment, sovereign immunity provides no defense. If, however, a claim alleges conduct that constitutes a violation of Title II of the ADA, but not the Fourteenth Amendment, the Court must determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Mingus*, 591 F.3d at 482 (quoting *Georgia*, 546 U.S. at 159). Such abrogation is valid if there exists "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Lane*, 541 U.S. at 520. The Court need not attempt to discern the parameters of this latter standard, however, because Plaintiff's *allegations* concerning his remaining claims, if proven, would constitute violations of both Title II of the ADA as well as the Fourteenth Amendment.

In his complaint, Plaintiff alleges that Defendants' conduct violated the ADA as well as both the due process and equal protection clauses of the Fourteenth Amendment. (ECF No. 1). On screening, the Court found that these allegations state a claim on which relief could be granted. (ECF No. 13). As the Court later observed, Defendants did not contest this conclusion.[2] (ECF No. 48, PageID.242). Defendants do not

---

[2] Plaintiff's Fourteenth Amendment claims were eventually dismissed on qualified immunity grounds. (ECF No. 48). This dismissal, however, was not because Plaintiff's allegations failed to state a claim, but instead, because the rights at issue were not

presently argue that Plaintiff's allegations fail to state a claim for violation of the Fourteenth Amendment.   Thus, the question whether Plaintiff's allegations state a claim under the Fourteenth Amendment has already been decided.   Furthermore, because Plaintiff's allegations have been found to state a claim under the Fourteenth Amendment, Defendants are not entitled to sovereign immunity regarding Plaintiff's remaining ADA claims.   Accordingly, the undersigned recommends that, to the extent Defendants argue that they are entitled to sovereign immunity, their motion be denied.

## II.   Summary Judgment

Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132).   The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."   29 U.S.C. § 794(a).

---

clearly established when Defendants acted.   (ECF No. 48, PageID.242-45).   Defendants have identified no authority suggesting that the "clearly established" prong of the qualified immunity analysis has any relevance in the present sovereign immunity analysis.

ADA and RA claims are analyzed similarly.    *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (en banc) ("[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act").   The analysis differs slightly, however, with respect to the causation element.

To prevail on his ADA claim, Plaintiff must establish: (1) that he is a qualified person with a disability; (2) that Defendant is subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, "because of" his disability.   *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015); *see also, Gohl v. Livonia Public Schools School District*, 836 F.3d 672, 682 (6th Cir. 2016) (under the ADA, the plaintiff must present evidence that his disability represents "a but-for cause of the discriminatory behavior").   To prevail on his RA claim, Plaintiff must establish that he is a qualified person with a disability and that he was subjected to discrimination "solely by reason of [his] disability."   *Bent-Crumbley v. Brennan*, 799 Fed. Appx. 342, 344-45 (6th Cir., Jan. 22, 2020).

In the context of a motion for summary judgment, ADA and RA claims based on indirect or circumstantial evidence are analyzed under the familiar *McDonnell-Douglas* burden shifting framework.   *See Tri-Cities Holdings LLC v. Tennessee Administrative Procedures Division*, 726 Fed. Appx. 298, 308 (6th Cir., Feb. 28, 2018); *Gohl*, 836 F.3d at 682-83.   Accordingly, Plaintiff must first establish a prima facie case of violation of his

rights. *See Tri-Cities Holdings*, 726 Fed. Appx. at 308. If Plaintiff makes this showing, the defendant "must then offer a legitimate, non-discriminatory reason for [his or her] challenged action." If the defendant makes this showing, the burden shifts back to Plaintiff who "must then present evidence allowing a jury to find that the [defendant's] explanation is a pretext for unlawful discrimination." *Ibid.*

Before addressing the specifics of Plaintiff's remaining claims, some further background is necessary.

### A. Plaintiff's Medical Accommodations

Plaintiff was diagnosed with polio in 1958 and suffers a "severe deformation" of his left foot. (ECF No. 85, PageID.502). Plaintiff was incarcerated with the Michigan Department of Corrections in 1972. (*Id.*). Treatment notes dated March 19, 1991, indicate that Plaintiff was permitted to wear shoes purchased by his family from an approved vendor. (ECF No. 85, PageID.518). A treatment note dated October 28, 1994, indicates that Plaintiff was authorized to wear his "own shoes to [the] visiting room." (ECF No. 85, PageID.520). The "expiration date" of this accommodation was identified as "indefinite." (*Id.*).

On or about September 18, 1998, Plaintiff was issued a Medical Detail permitting him to wear a "prescription shoe" even "on visits." (ECF No. 1, PageID.17). This Medical Detail did not indicate a termination date for this accommodation. (*Id.*). On January 24, 2001, Plaintiff was issued a Special Accommodation Notice indicating that he was permitted to wear "orthopedic" shoes. (ECF No. 1, PageID.19). This Notice,

however, neither authorized Plaintiff to wear his orthopedic shoes on visits nor indicated the date on which this accommodation terminated.  (*Id.*).   On April 15, 2003, Plaintiff was issued a Special Accommodation Notice indicating that he was permitted to wear "orthopedic" shoes.   (ECF No. 1, PageID.20).   While this Notice did not authorize Plaintiff to wear his orthopedic shoes on visits, it did indicate that this accommodation was "perm[anent]."   (*Id.*).

Treatment notes dated September 16, 2010, and September 13, 2011, indicate that Plaintiff was permitted to wear an "orthotic shoe."   (ECF No. 1, PageID.22; ECF No. 132, PageID.787).   Again, these Notices neither authorized Plaintiff to wear his orthopedic shoes on visits nor indicated the date on which this accommodation terminated.   (*Id.*).   Treatment notes dated September 19, 2012 – four days before the incident giving rise to this action – indicate that Plaintiff no longer had an accommodation for orthopedic or athletic footwear.   (ECF No. 132, PageID.790).  Treatment notes dated September 26, 2012 – three days after the incident giving rise to this action – likewise indicate that Plaintiff did not have an accommodation for orthopedic or athletic footwear.   (ECF No. 132, PageID.791).   On December 20, 2012, Plaintiff was again provided an accommodation to wear an "orthotic" shoe.   (ECF No. 132, PageID.792).

The Court does not necessarily disagree with Plaintiff that "[o]ne does not heal from a polio affliction" and, therefore, his disability and need for prescription shoes is likely permanent.   Nevertheless, there is no dispute, on the present record, that medical

treatment notes, dated only days before and days after the events giving rise to this action, reflected that Plaintiff was not authorized to wear any special footwear.

B.     Indirect and Inferential Evidence

Plaintiff asserts that he wore his orthopedic shoes, without incident, for several years prior to September 22, 2012.   While other prison officials may have been aware of Plaintiff's foot impairment and need for orthopedic shoes, Plaintiff has presented no evidence that Defendants were aware of such prior to September 22, 2012.   Plaintiff has also presented no evidence from which it can reasonably be inferred that Defendants should have known that Plaintiff suffers a foot deformity necessitating orthopedic shoes.

While Plaintiff testified that he suffers from a "severe deformation" in his left foot (ECF No. 85, PageID.502), he has presented no evidence that the severity of his foot impairment would have been obvious to a lay person.   Plaintiff has presented no evidence that he ever encountered Defendants, prior to September 22, 2012, or that the nature of any such encounter was sufficient to put them on notice as to the existence of his foot impairment or the need for orthopedic shoes.   Plaintiff has also presented no evidence suggesting that Defendants learned, from other prison officials or elsewhere, of his foot impairment or need for accommodation.

-14-

In sum, while the Court can speculate whether Defendants knew or should have known of Plaintiff's foot deformity or his need for accommodation, the record simply does not contain, in the undersigned's estimation, evidence from which a reasonable person can infer that Defendants knew, or even should have known, that Plaintiff suffered a foot deformity constituting a disability or requiring an accommodation.

C.    Relevant MDOC Policy Directives

Policy Directive 04.07.110 articulates the "state-issued" items to be provided to inmates.   Policy Directive 04.07.112 details the additional personal property items that prisoners are authorized to possess.   As the Court previously noted, neither party provided the Court with complete copies of these Policy Directives.   Accordingly, the Court attached to the previous Report and Recommendation copies of these Policy Directives as Appendices A and B.   (ECF No. 146).   Both Appendices are expressly incorporated herein.

As of September 23, 2012, Plaintiff was issued one pair of state-issued shoes. MDOC Policy Directive, 04.07.110 ¶ I (eff. Feb. 6, 2012).   Plaintiff was also permitted to purchase and possess three additional pairs of shoes.   MDOC Policy Directive, 04.07.112, Att. C ¶ 5 (eff. Mar. 21, 2011).   But the Policy expressly provides that "personal footwear shall not be worn on visits. . . ."   (*Id.*).   Accordingly, the only shoes that Plaintiff was permitted to wear during visitation were: (1) state-issued shoes; or (2) shoes for which he possessed a valid medical accommodation.   Before assessing the

claims asserted against each Defendant, two additional matters must be briefly addressed.

First, Policy Directive 04.07.112 articulates the additional personal property items that inmates are permitted to possess.  The amount of additional property an inmate is permitted to possess, however, depends on his security level.  Implicit in Plaintiff's argument is that he was a security level II prisoner as of September 23, 2012. While Defendant does not appear to contest this assertion, Plaintiff has presented no evidence that such was, in fact, the case.  While Plaintiff has submitted evidence that he is presently a security level II prisoner (ECF No. 142, PageID.890) there is no evidence of his security level on the date in question.  Nevertheless, the Court has assumed for present purposes that Plaintiff was a security level II prisoner on September 23, 2012.

Second, it is well understood that only admissible evidence can be considered when resolving a motion for summary judgment.  *See, e.g., Bluegrass Dutch Trust Morehead, LLC v. Rowan County Fiscal Court*, 734 Fed. Appx. 322, 327 (6th Cir., May 10, 2018).  The proffered evidence, however, "need not be in admissible form [merely] its content must be admissible."  *McGuire v. Michigan Department of Community Health*, 526 Fed. Appx. 494, 496 (6th Cir., May 9, 2013).   In support of their motion, Defendants have submitted an affidavit signed by Kelly Melle, an MDOC Communication and Litigation Specialist.   (ECF No. 132-5, PageID.794-800).   This affidavit, however, is not properly executed.  (ECF No. 132-5, PageID.798).   Melle does not appear to have any first-hand knowledge of the events giving rise to this action.   Instead, Melle appears to

have merely reviewed Plaintiff's medical and prison records and opined about such, often in conditional terms.   Given that Plaintiff's medical and prison records, in effect, speak for themselves and Melle appears to lack any first-hand knowledge of the matters in question, the Court has disregarded Melle's affidavit.[3]   With this backdrop, the Court can turn to Plaintiff's remaining claims.

D.    Defendant Muzzin

Plaintiff alleges that Muzzin improperly confiscated his shoes prior to his visit on September 23, 2012.   Plaintiff's claim fails for two reasons.   First, Plaintiff has failed to present evidence that Defendant Muzzin confiscated his shoes "because of" or "solely by reason of" his alleged disability.   Likewise, the Court is not persuaded that the record reasonably supports the inference that Defendant acted "because of" or "solely by reason of" Plaintiff's alleged disability.   Thus, Plaintiff cannot establish a prima facie case that his rights under the ADA or RA were violated.

Moreover, even if the Court assumes that Plaintiff can establish a prima facie case, Defendant has demonstrated that she acted for a legitimate, non-discriminatory reason which Plaintiff has failed to refute.   In her discovery responses, Defendant Muzzin asserts that she confiscated Plaintiff's shoes because Plaintiff was attempting to wear "personal shoes."   (ECF No. 132-1, PageID.762).   Muzzin conceded that Plaintiff would have been permitted to wear orthopedic shoes to his visit, but only if he had a

---

[3] The Court notes, however, that even were it to consider Melle's affidavit, it would not alter the resolution of Defendants' motion.

valid medical accommodation for such. (*Id.*, PageID.764). As Defendant Muzzin notes, Plaintiff did not have a valid medical accommodation for non-state issued shoes. (*Id.*, PageID.767). As previously discussed, treatment notes reveal that Plaintiff did not, as of September 23, 2012, possess a medical accommodation to wear anything other than state-issued shoes to visitation. In sum, Defendant has demonstrated that she confiscated Plaintiff's shoes for a legitimate, non-discriminatory reason.

Plaintiff, for his part, has failed to present evidence from which a reasonable juror could conclude that Defendant's proffered rationale is merely a pretext for unlawful discrimination. Plaintiff argues that, despite what the MDOC's records indicate, the conclusion that he did not have a valid medical accommodation was mistaken and had Defendant Muzzin only contacted healthcare, as MDOC Policy requires, she would have been informed that such was the case. Even if the Court assumes that the MDOC records, on the date in question, were inaccurate, Plaintiff has presented no evidence supporting his argument that healthcare personnel were aware that such was the case and would have communicated that to Defendant Muzzin.

Accordingly, the undersigned recommends that Defendant Muzzin's motion for summary judgment be granted.

E. Defendant Martin

Plaintiff alleges that, immediately following his visit on September 23, 2012, Martin refused to return his personal shoes. Plaintiff has failed, however, to present evidence that Defendant acted "because of" or "solely by reason of" Plaintiff's alleged

disability. Moreover, the Court is not persuaded that the record supports the inference that Defendant acted "because of" or "solely by reason of" Plaintiff's alleged disability. While Defendant has not submitted evidence directly asserting what motivated his actions, the most reasonable inference to be drawn from the evidence is that he, like Defendant Muzzin, acted because Plaintiff simply did not have an accommodation to possess the shoes in question. In sum, Plaintiff has failed to demonstrate the existence of a genuine factual dispute on the question whether Defendant Martin violated his rights under the ADA or the RA. Accordingly, the undersigned recommends that Defendant Martin's motion for summary judgment be granted.

F.     Defendant Gobert

Following Defendant Martin's refusal to return Plaintiff's personal shoes, Plaintiff began pursuing administrative relief. According to Plaintiff, because his confiscated shoes were characterized as contraband, prison officials were required to conduct an administrative hearing regarding the matter. Plaintiff's claim against Defendant Gobert is that Gobert did not conduct this required administrative hearing in a timely manner. Even if the Court assumes that Gobert was required to conduct an administrative hearing and, furthermore, that such was not conducted in a timely manner, Plaintiff has presented absolutely no evidence that Gobert's failure in this regard was "because of" or "solely by reason of" his disability. Accordingly, the undersigned recommends that Defendant Gobert's motion for summary judgment be granted.

G.     Deliberate Indifference

Finally, Defendants argue that they are entitled to relief because Plaintiff cannot establish that they acted with deliberate indifference.   Because Plaintiff is seeking monetary damages, he must not only establish that Defendants violated his rights under the ADA or RA, but must also demonstrate that Defendants acted with "deliberate indifference."   *See, e.g., R.K. ex rel. J.K. v. Board of Education of Scott County, Kentucky*, 637 Fed. Appx. 922, 925 (6th Cir., Feb. 5, 2016); *Updike v. Multnomah County*, 870 F.3d 939, 949-51 (9th Cir. 2017).   In this context, a party acts with deliberate indifference if it "disregards a known or obvious consequence of its actions, namely that its actions will violate the plaintiff's federally-protected rights."   *R.K. ex rel. J.K.*, 637 Fed. Appx. at 925.   Deliberate indifference is not established by action that is merely negligent, rather Plaintiff must establish that Defendant acted with "deliberateness."   *Updike*, 870 F.3d at 950-51.

For the reasons discussed herein, the undersigned finds that Plaintiff has failed to present evidence from which a reasonable juror can conclude that Defendants acted with deliberate indifference.   As already noted, Plaintiff has presented no evidence that Defendants possessed actual knowledge, as of September 22, 2012, that Plaintiff suffered a foot impairment constituting a disability or requiring an accommodation.   Likewise, Plaintiff has presented no evidence from which it can reasonably be inferred that Defendants should have known, as of September 22, 2012, that Plaintiff suffered a foot impairment constituting a disability or requiring an accommodation.   Thus, Plaintiff

cannot establish that Defendants knew or should have known that their actions could violate Plaintiff's rights.   Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on this alternative basis.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 131) be granted in part and denied in part, and that this matter be terminated.   Specifically, the undersigned recommends that to the extent Defendants argue that they are entitled to sovereign immunity, Defendants' motion be denied, but that Defendants' motion otherwise be granted.   For the same reasons the undersigned recommends that Defendants' motion be granted, the undersigned finds that an appeal of such would be frivolous.   *Coppedge v. United States*, 369 U.S. 438, 445 (1962).   Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated:   March 29, 2021                    /s/Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge