UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON DOUGLAS #132125,

    Plaintiff,

v

KEARA MUZZIN, et al.,

    Defendants.

NO. 1:15-cv-41

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

---

Gary J. Mouw (P69236)
Justin A. Allen (P84698)
Attorney for Plaintiff
Varnum LLP
333 Bridge St NW Ste 1700
Grand Rapids, MI 49504
(616) 336-6000

Andrew J. Jurgensen (P81123)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Department of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7565

---

**PLAINTIFF'S OBJECTION TO MAGISTRATE'S MARCH 29, 2021
REPORT AND RECOMMENDATION**

### I. INTRODUCTION

Plaintiff Leon Douglas is disabled. Diagnosed with polio at the age of four, and currently suffering from diabetes, Mr. Douglas has a severe left foot deformity. In 2003, an MDOC health care provider issued Mr. Douglas a written, <u>permanent</u> special accommodation providing that he was entitled to wear orthopedic shoes. In September 2012, Mr. Douglas had a visitor while imprisoned at the Michigan Reformatory in Ionia ("RMI"). Defendants do not dispute that a prisoner, with a special accommodation for orthopedic shoes, is entitled to wear orthopedic shoes on visits. Nonetheless, when Mr. Douglas arrived at the control center for his visit, Defendant Muzzin refused to permit him to wear his orthopedic shoes. Mr. Douglas showed Defendant

Muzzin his special accommodation. She disregarded it. Worse yet, she failed to make any attempt to verify Mr. Douglas' special accommodation – even though she was required to do so pursuant to MDOC policy.

During his visit, Mr. Douglas was forced to wear state-issued shoes, which caused severe pain. Terminating his visit early, Mr. Douglas returned to the control center, where he encountered Defendant Martin, who refused to return Mr. Douglas' orthopedic shoes. Though Mr. Douglas also showed Defendant Martin his special accommodation notice, his plea for the return of his shoes fell on deaf ears. Defendant Martin required Mr. Douglas to return the state-issued shoes and ordered Mr. Douglas to return to his cell in his bare feet.

Mr. Douglas sued, alleging violations of the Americans with Disabilities Act and the Rehabilitation Act. Defendants moved for summary judgment, and the Magistrate previously recommended that Defendants' motion be granted. ECF No. 146. Failing to draw every reasonable inference in favor of Mr. Douglas, the Magistrate believed that Mr. Douglas did not have a special accommodation for orthopedic shoes in September 2012 because an MDOC health care services electronic record did not display a special accommodation, at that moment. *See* R&R, ECF No. 146, PageID.919. The Magistrate failed to consider the direct evidence from Mr. Douglas, including that Mr. Douglas <u>told</u> Defendants he was disabled, and that Mr. Douglas <u>showed</u> Defendants his permanent special accommodation.

Mr. Douglas objected to the Magistrate's Report and Recommendation, s*ee* ECF NO. 148, and this Court dismissed the Report and Recommendation, observing that the record contains evidence that "suggest[s] that Plaintiff had a special accommodation at the time of the visit, regardless of whether particular treatment notes reflected it, and that defendants were wrong to conclude otherwise." *See* ECF No. 151, PageID.982-83. The Court correctly observed that Mr.

Douglas' will offer evidence that he had a foot deformity and a special accommodation for orthopedic shoes, and that a reasonable jury might conclude that a correctional officer "would at least perform a follow up inquiry on the matter." *See id*, PageID.983.

Before making a final call on Defendants' summary judgment motion, this Court remanded this matter to the Magistrate for a recommendation "on the remaining grounds, including 11th Amendment immunity." *See id*. On remand, the Magistrate correctly held that Defendants "are not entitled to sovereign immunity" as to the ADA claim. *See* ECF No. 152, PageID.993. Yet, the Magistrate erred again in recommending the dismissal of Mr. Douglas' ADA/RA claims, suggesting that Mr. Douglas "presented no evidence from which it can reasonably be inferred that Defendants should have known that Plaintiff suffers a foot deformity necessitating orthopedic shoes." *See* ECF No. 152, PageID.997.

Again, the Magistrate ignores the direct evidence from Mr. Douglas. Mr. Douglas testifies that <u>he told</u> Defendants that he had a foot deformity necessitating orthopedic shoes. From this evidence alone, viewed in light most favorable to Mr. Douglas, Defendants should have known that Mr. Douglas suffered from a foot deformity necessitating orthopedic shoes. And there is more. Not only did Mr. Douglas tell Defendants, <u>he showed</u> Defendants a copy of his permanent special accommodation form, reflecting a medical provider's confirmation that Mr. Douglas had a disability entitling him to a permanent special accommodation to wear orthopedic shoes. The special accommodation that Mr. Douglas showed directly to Defendants is shown below:

3

> MICHIGAN DEPARTMENT OF CORRECTIONS - Bureau of Health Care
> PHYSICIAN'S ORDERS
> 4835-7122
> CHX-122 1/97
>
> JUSTIFICATION:
> Special accommodation
> Orthopedic Shoes
>
> A 72 HOUR AUTOMATIC STOP IS IN EFFECT ON ALL CONTROLLED DRUGS UNLESS OTHERWISE SPECIFIED. NOTE TIME AND DOSAGE ON ALL ORDERS.
>
> Provider's Signature: Beverly Savinn PA
> Number: 31006
> Date: 4-3-03
> Time: 1400
>
> NAME: Douglas Leon
> NO: 132125
> LOCK: 9-18-54

Where Mr. Douglas <u>told</u> Defendants that he had a foot deformity necessitating orthopedic shoes, and where Mr. Douglas <u>showed</u> Defendants his permanent special accommodation for orthopedic shoes, there is no question that Mr. Douglas presented evidence from which it reasonably can be inferred that Defendants should have known that Mr. Douglas suffers from a foot deformity necessitating orthopedic shoes. Though incarcerated, Mr. Douglas does not come to this Court down in the count before the first pitch. Like any other plaintiff, the direct evidence he presents must be viewed in light most favorable to him. Viewed in this light, a reasonable trier of fact may certainly conclude that Defendants discriminated against Mr. Douglas on account of his disability.

II. **BACKGROUND**

    A. **MR. DOUGLAS HAS A PHYSICAL DISABILITY (LEFT FOOT DEFORMITY) FOR WHICH HE HAS A PERMANENT SPECIAL ACCOMMODATION FOR ORTHOPEDIC SHOES.**

Born in 1954, Mr. Douglas was diagnosed at the age of four with polio, a disease that attacked the muscles surrounding his left foot, leaving it severely deformed. *See* Pl.'s Aff. ¶3, PageID.502. In April 2003, Mr. Douglas received a written Special Accommodation for

4

orthopedic shoes. *See* ECF NO. 53-1, PageID.284. As the health care provider indicated on the Physician's Order, the Special Accommodation was permanent:

[Physician's Orders form from Michigan Department of Corrections - Bureau of Health Care, indicating "Special accommodation Orthopedic Shoes" for Douglas Leon, No. 132125, dated 4-3-03 at 1400]

*See id.*

An MDOC health care provider also prepared a "Special Accommodation Notice," a copy of which is shown below. The Special Accommodation Notice provides that Mr. Douglas has a permanent special accommodation for orthopedic shoes. As reflected in the Special Accommodation Notice, the "White" copy is kept in the prisoner's health records. Accordingly, the health department had a physical, written record reflecting Mr. Douglas' permanent disability.[1]

---

[1] The other copies of the Special Accommodation Notice are distributed elsewhere, with the "canary" copy provided to the Record Office file, the "pink" copy provided to the counselor, and the "goldenrod" copy provided to the prisoner.

5

| | | |
|---|---|---|
| MICHIGAN DEPARTMENT OF CORRECTIONS-Bureau of Health Care | | 4835-7244<br>CHJ-244 12/95 |

This form is to be completed only when medical condition or physical disability affects placement, housing, work assignment, or requires special supplies/equipment.

Necessary accommodations: If accommodations are temporary record date accommodation must be reviewed beside checkbox (HX ☐ _____ MM/DD/YY).

**A. Housing:**

- HA ☐ _____ Barrier Free/Wheelchair Accessible
- HB ☐ _____ Smoke Free
- HC ☐ _____ Ground Floor Room
- HD ☐ _____ Continuous Electric Power
- HE ☐ _____ Continuous Access to Toilet
- HF ☐ _____ Shower Chair
- HG ☐ _____ Bottom Bunk
- HH ☐ _____ Single-person Room
- HI ☐ _____ Sink/toilet in Room
- HJ ☐ _____ Extra Bedding/Clothing (specify) _____
- HK ☐ _____ Frequent Laundry Service
- HL ☐ _____ Geriatric Unit
- HZ ☐ _____ Other (specify) _____

**B. Work Assignment:**

- WA ☐ _____ No Work Assignment-Temporary Restriction
- WB ☐ _____ No Standing
- WC ☐ _____ No Heights
- WD ☐ _____ No Driving/Dangerous Machinery
- WE ☐ _____ No Lifting More Than _____ lbs
- WZ ☐ _____ Other (specify) _____

**C. Medical Equipment/Supplies:**

- MA ☐ _____ Limb Prosthesis (specify) _____
- MB ☐ _____ Brace (specify type) _____
- MC ☐ _____ Crutches
- MD ☐ _____ Cane (type) _____
- ME ☐ _____ Walker
- MF ☐ _____ Dressing/catheter/colostomy Supplies
- MG ☒ *plum* Prescription Shoe (specify) *orthopedic*
- MI ☐ _____ Dialysis - Peritoneal
- MJ ☐ _____ Wheelchair (type) _____
- MK ☐ _____ Contact Lens(es) & Supplies
- ML ☐ _____ Hearing Aid
- MM ☐ _____ Incontinence Garment
- MN ☐ _____ Special Garment (specify) _____
- MO ☐ _____ Glasses - RX: _____
- MZ ☐ _____ Other (specify) _____

**D. Other:**

- OA ☐ _____ Attendant to assist with meal access and other movement inside the institution. Attendant will not feed or lift the patient, or perform elements of personal hygiene.
- OB ☐ _____ Therapeutic Diet (specify) _____
- OC ☐ _____ Handicap Table
- OD ☐ _____ Communication Assistance: ☐ Hearing  ☐ Sight  ☐ Reading/writing
- OE ☐ _____ Transport Vehicle with Lift
- OZ ☐ _____ Other (specify) _____

| | Signature | Title | Number | Date |
|---|---|---|---|---|
| Completed By: | Linda Haase | ARN-13 | 10452 | 4/15/03 |
| Approved By: | Beverly Soring PAC | PAC | 31006 | 4/15/03 |

**SPECIAL ACCOMMODATION NOTICE**

Patient Identification
Name: Douglas, Leon
Number: 131125
D.O.B: 9-18-54

Distribution: White-Health Record, Canary-Record Office File, Pink-Counselor, Goldenrod-Prisoner

*See* ECF No. 53-1, PageID.285.

Mr. Douglas' Special Accommodation Orders were eventually incorporated into MDOC health care services electronic records. With respect to medical equipment, the Special Accommodation Orders reflected that Mr. Douglas was entitled to prescription, orthopedic shoes. *See* Special Accommodation Orders 9-16-2010, ECF No. 1, PageID.22. The Special Accommodation for his orthopedic shoes did not include a "stop date." *See id*. One does not heal from a polio affliction – the disability is permanent. And so was Mr. Douglas' medical accommodation for prescription orthopedic shoes.

### B. DISCRIMINATING AGAINST MR. DOUGLAS ON THE BASIS OF HIS DISABILITY, DEFENDANTS REFUSED TO HONOR MR. DOUGLAS' MEDICAL ACCOMMODATION.

For nearly a decade, Mr. Douglas would display his 2003 Special Medical Accommodation to prison guards when he would be called for a visit or on a transfer, without running into any issue. *See* Pl.'s Aff. ¶ 12, ECF No. 85-1, PageID.504. Transferred from prison to prison every two to three years, he never had a problem with MDOC staff regarding his orthopedic shoes: appreciating that he had a Special Medical Accommodation, MDOC staff honored it. Until he ran into Defendants, that is.

On September 23, 2012, Mr. Douglas had a visitor at RMI. *See* Verified Compl. ¶ 1, ECF No. 1, PageID.6. When Mr. Douglas arrived at the control center, Defendant Muzzin refused to permit Mr. Douglas into the visiting room wearing his approved prescription orthopedic shoes. *See id.* ¶ 2. Mr. Douglas told Defendants Muzzin that he had a foot deformity requiring orthopedic shoes and he showed her his Special Medical Accommodation for orthopedic shoes. *See* Pl.'s Aff. ¶ 11, ECF No. 85-1, PageID.504. Nonetheless, Defendant Muzzin refused to permit Mr. Douglas to attend the visit wearing his prescription orthopedic shoes – shoes that he had been wearing while in the custody of the MDOC for nearly a decade. *See* Verified Compl. ¶ 5, ECF No. 1, PageID.6.

7

When Mr. Douglas showed Defendant Muzzin his Special Medical Accommodation Notice, she was required pursuant to MDOC policy to attempt to verify it with the health care staff. MDOC policy provides that "[i]f a prisoner claims to have a currently valid Medical Detail or Special Accommodation Notice for which the housing unit does not have a copy or has not received telephone notification of its existence, housing unit staff <u>shall</u> contact appropriate BHCS staff for verification[.]"  *See* MDOC Policy Directive re Medical Details and Special Accommodation Notices, ¶ I, ECF No. 85-2, PageID.509.

Defendant Muzzin did not attempt to verify his medical accommodation.  *See* Def. Muzzin's Disc. Responses, ECF No. 132-1, PageID.758-767.  Instead, she refused to allow Mr. Douglas to wear his medically prescribed shoes on the visit and instructed him to wear state issued shoes instead.  *See* Verified Compl. ¶ 8, ECF No. 1, PageID.6.  Not wishing to miss a visit with a friend, Mr. Douglas acquiesced to Defendant Muzzin's directive.  *See id.* ¶ 9; *see also*, Pl.'s Aff. ¶ 14, ECF No. 85-1, PageID.504-505.  However, the MDOC issued shoes caused Mr. Douglas such severe pain that he was forced to terminate the visit early.  *See id.*

When Mr. Douglas left the visiting room and returned to the RMI control center, he was met by Defendant Martin, who refused to return Mr. Douglas' orthopedic shoes.  *See* Verified Compl. ¶¶ 10-11, ECF No. 1, PageID.6; *see also*, Pl.'s Aff. ¶ 15, ECF No. 85-1, PageID.505.  Mr. Douglas informed Defendant Martin that he needed his orthopedic shoes to accommodate his disability, and that he could not wear the state issued shoes because they were causing him too much pain and discomfort.  *See* Verified Compl. ¶ 12, ECF No. 1, PageID.7; *see also*, Pl.'s Aff. ¶ 15, ECF No. 85-1, PageID.505.  Ignoring Mr. Douglas' plea, Defendant Martin informed Mr. Douglas that his prescription shoes were being "confiscated as contraband."  *See* Pl.'s Aff. ¶ 15, ECF No. 85-1, PageID.505.  Defendant Martin then took from Mr. Douglas the state issued shoes

8

he was forced to wear on his visit and ordered Mr. Douglas to return to his cell in his bare feet. *See id*.

There was no basis to seize Mr. Douglas' orthopedic shoes as contraband. Neither a Notice of Intent was prepared nor an Administrative Hearing held regarding the "Contraband Removal," as required by MDOC policy. *See* ECF No. 1, PageID.31. RMI's Warden concluded that Mr. Douglas' "due process was violated." *See id*.

Mr. Douglas did not know whether his orthopedic shoes would ever be returned. From September 23, 2012 through November 8, 2012, Mr. Douglas repeatedly requested the return of his orthopedic shoes that were needed to accommodate his disability. *See* Verified Compl. ¶ 19, ECF No. 1, PageID.7. Mr. Douglas' shoes were not returned until 45 days after they had been unlawfully confiscated. *See* Pl.'s Aff. ¶ 16, ECF No. 85-1, PageID.505. For 45 days, Mr. Douglas did not have shoes that accommodated his disability. Mr. Douglas was relegated to wearing open-toed shower shoes ("flip flops"), and without his shoes (that enclosed the toes) MDOC policy precluded Mr. Douglas from attending activities, services, and programs. By way of example, Mr. Douglas could not attend Christian Services, recreational activities (such as weight training), and he could not even dine in the chow hall.

Mr. Douglas' federal rights to not be subjected to discrimination on account of his physical disability were violated. Seeking redress for the violation of his federal rights, Mr. Douglas filed this legal action.

### C. THE MAGISTRATE INITIALLY RECOMMENDED THAT MR. DOUGLAS' CLAIMS BE DISMISSED, AND THIS COURT REJECTED THE RECOMMENDATION.

Defendants moved for summary judgment, seeking the dismissal of Mr. Douglas' RA/ADA claims. Responding, Mr. Douglas demonstrated that there was sufficient evidence to create a genuine issue of material fact that Defendants acted with deliberate indifference to Mr. Douglas'

9

federal rights under the ADA/RA when they (1) ignored Mr. Douglas' medical accommodation that he presented to them; (2) refused to permit him to wear orthopedic shoes on a visit; (3) failed to follow MDOC policy requiring staff to attempt to validate a medical accommodation; and (4) seized Mr. Douglas' medically prescribed orthopedic shoes as "contraband" in violation of MDOC policy.  *See* ECF No. 142.

Nonetheless, the Magistrate recommended granting Defendants' summary judgment motion, deciding a factual issue by concluding that Mr. Douglas did not have a special accommodation for orthopedic shoes in September 2012 because an MDOC health care electronic record did not display (at that time) a special accommodation.  *See* ECF No. 146, PageID.916. Objecting to this recommendation, Mr. Douglas demonstrated that the absence of the special accommodation being identified on an electronic record was not dispositive, especially where there was no dispute that Mr. Douglas had a <u>written</u> special accommodation, signed by a medical provider, that he showed to Defendants.  Furthermore, Mr. Douglas highlighted that Defendants violated MDOC policy when they failed to make any attempt to validate his special accommodation, a copy of which is kept in his health care record.  *See* ECF No. 53-1, PageID.285 (reflecting that a copy of the permanent accommodation is kept in Mr. Douglas' health care records).

This Court agreed that the Magistrate erred in dismissing Mr. Douglas' claims.  *See* ECF. No. 151.  In particular, the Court correctly observed that the electronic medical records – before and after September 22, 2012 – are only part of the picture.  There is other evidence, including Mr. Douglas' testimony that he told Defendants he had a foot deformity requiring a special accommodation of orthopedic shoes and that he showed Defendants his written, permanent accommodation.  This Court remanded this matter to the Magistrate, requesting a recommendation

10

on the alternative bases, including immunity, offered by Defendants in support of summary judgment.

  **D.**  **THE MAGISTRATE CORRECTLY REJECTED DEFENDANTS' SOVEREIGN IMMUNITY DEFENSE BUT ERRED AGAIN IN RECOMMENDING THAT MR. DOUGLAS' ADA/RA CLAIMS BE DISMISSED.**

As to Mr. Douglas' ADA claim, the Magistrate correctly concluded that because Mr. Douglas' allegations state a claim under the Fourteenth Amendment, "Defendants are not entitled to sovereign immunity regarding Plaintiff's remaining ADA claims."  *See* ECF NO. 151, PageID.983.  *See also*, Pl's Resp. Opp'n Summ J. Mot., ECF No. 142, PageID.850 ("[Mr. Douglas'] ADA claim is based on the fact that there was no rational basis for Defendant Muzzin's refusal to honor his medical accommodation and concomitant failure to follow MDOC policy to verify that he was entitled to a medical accommodation; nor was there a rational basis for Defendant Martin's decision to confiscate Mr. Douglas' prescription orthopedic shoes needed to accommodate his disability where shoes are not contraband under MDOC policy").[2]

However, the Magistrate erred when he recommended the dismissal of Mr. Douglas' ADA/RA claims.  Disregarding Mr. Douglas' testimony that he told Defendants he had a foot deformity necessitating a special accommodation, and ignoring the direct evidence that Mr. Douglas showed Defendants his written, permanent special accommodation to Defendants, the Magistrate astoundingly suggests there is "no evidence from which it can reasonably be inferred that Defendants should have known that Plaintiff suffers a foot deformity necessitating orthopedic

---

[2] Even if Mr. Douglas did not allege conduct that violated the Fourteenth Amendment, there was still a valid abrogation of the state's sovereign immunity pursuant to Section 5 of the Fourteenth Amendment, given the history of discrimination against disabled individuals, especially in prisons.  *See* ECF No. 142, PageID.851.

shoes." Other than turning a blind eye to Mr. Douglas' direct evidence, this conclusion is unsupportable.

### III. LAW AND ARGUMENT

#### A. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, where a party objects to a Magistrate's Report and Recommendation "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 12 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 451(3d ed. 2014). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). *De novo* review in these circumstances require at least a review of the evidence before the Magistrate Judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

#### B. THIS COURT SHOULD AGAIN REJECT THE MAGISTRATE'S RECOMMENDATION, AND INSTEAD ENTER AN ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

Defendants do not dispute that Mr. Douglas is disabled. Diagnosed at the age of four with polio, and currently suffering from diabetes, Mr. Douglas has a severe left foot deformity, requiring a permanent medical accommodation. The only issue is whether, viewing the evidence in light most favorable to Mr. Douglas as the non-moving party, a reasonable trier of fact could conclude that Defendants discriminated against Mr. Douglas on account of his disability, where:

- Mr. Douglas received a permanent Special Accommodation from an MDOC medical provider for orthopedic shoes;

- Mr. Douglas told Defendants he suffered from a foot deformity necessitating an accommodation of orthopedic shoes.

- Mr. Douglas showed Defendants his written permanent Special Accommodation for orthopedic shoes.

- Defendant Muzzin made no attempt to verify Mr. Douglas' Special Accommodation with the healthcare staff in violation of MDOC policy.

- Mr. Douglas' health care records confirm that Mr. Douglas has a permanent special accommodation for orthopedic shoes.

- Defendant Muzzin refused to allow Mr. Douglas to wear his orthopedic shoes on a visit, and

- Defendant Martin confiscated Mr. Douglas' orthopedic shoes.

When these facts are considered and viewed in light most favorable to Mr. Douglas, there is clearly a genuine issue of material fact for trial.

Recommending that Defendants' summary judgment motion be granted, the Magistrate, this time around, inexplicably concludes that "Plaintiff has presented no evidence from which it can reasonably be inferred that Defendants should have known that Plaintiff suffers a foot deformity necessitating orthopedic shoes." ECF NO. 152, PageID.997. But this conclusion entirely disregards the evidence Mr. Douglas presented relating to the incident. Mr. Douglas <u>told</u> Defendants that he had a foot deformity necessitating an accommodation of orthopedic shoes. Not only that, Mr. Douglas <u>showed</u> Defendants his written, medical accommodation, providing that he had a permanent accommodation for orthopedic shoes. This is direct evidence from which it reasonably can be inferred that Defendants should have known that Mr. Douglas suffers a foot deformity necessitating orthopedic shoes. While perhaps a jury will view the evidence differently, that is for the jury to decide, not this Court. When viewed in light most favorable to Mr. Douglas, he presented sufficient evidence from which it can be inferred that Defendants knew he had a foot deformity and a special accommodation to wear orthopedic shoes, and despite this discriminated

against Mr. Douglas on account of his disability by refusing to allow him to wear his orthopedic shoes on a visit and then unlawfully confiscating his shoes.

The Magistrate also reiterated his opinion that this Court previously rejected – "that Plaintiff did not, as of September 23, 2012, possess a medical accommodation to wear anything other than state-issued shoes to a visitation." Compare ECF No. 152, PageID.1001 with ECF NO. 146, PageID.919.[3] As this Court explained in its order dismissing the Magistrate's initial Report and Recommendation, the health care electronic records – immediately before and after September 2012 – are only "part of the picture." ECF No. 151.

As this Court recognized, there is other evidence from which "a reasonable fact finder could still infer that [Mr. Douglas] actually had a special accommodation at the time of the visit." See *id*. For instance, Defendants do not dispute that Mr. Douglas' written Special Accommodation, shown below, was signed by a medical provider, and provided that his special accommodation was permanent:

---

[3] The Magistrate suggests that the MDOC health care record reflecting "Special Accommodation Orders" is a "treatment note." But there is no evidence in the record to that effect. Rather, it is merely a printout of an MDOC health care electronic record that inaccurately omitted Mr. Douglas' special accommodation for orthopedic shoes.

> [Physician's Orders form from Michigan Department of Corrections - Bureau of Health Care, handwritten: "Special accommodation Orthopedic Shoes", Name: Douglas Leon, No: 132125, Lock: 9-18-54, dated 4-3-03]

*See* ECF No. 53-1, PaggeID.284.

From this Special Accommodation, Defendants knew that Mr. Douglas received from a medical provider a written, permanent special accommodation for orthopedic shoes. When the evidence is viewed in light most favorable to Mr. Douglas, as it must be, a reasonable trier of fact could certainly conclude that Mr. Douglas had a special accommodation for orthopedic shoes. *See* Order, ECF No. 151, PageID.982-83.

Moreover, a reasonable trier of fact could certainly conclude that Defendants discriminated against Mr. Douglas on account of his disability when they failed to even attempt to validate Mr. Douglas' Special Accommodation. That violated MDOC policy, which provides that "[i]f a prisoner claims to have a currently valid Medical Detail or Special Accommodation Notice for which the housing unit does not have a copy or has not received telephone notification of its existence, housing unit staff <u>shall</u> contact appropriate BHCS staff for verification[.]" *See* ECF No. 85-2, PageID.509 (emphasis added). Defendants refusal to attempt to validate Mr. Douglas' special accommodation demonstrates Defendants' deliberate indifference to Mr. Douglas' disability. Indeed, this Court observed that a reasonable jury might conclude that a correctional officer "<u>would at least perform a follow up inquiry on the matter.</u>" *See* ECF No. 151, PageID.983.

15

Further confirming that Mr. Douglas had a permanent accommodation for orthopedic shoes is the fact that the MDOC re-identified Mr. Douglas' accommodation within its electronic records in December 2012. *See* ECF NO. 132, PageID.792. The MDOC's action was not the result of Mr. Douglas being "revaluated" by a medical provider. Rather, the MDOC was simply correcting its mistake in erroneously omitting the accommodation from its electronic records for a period in the fall of 2012. Since 2003, Mr. Douglas had a permanent medical accommodation for orthopedic shoes. Mr. Douglas' entitlement to the accommodation was not "interrupted" or "withdrawn" simply because the MDOC made a mistake when it inadvertently removed identification of the special accommodation from its electronic records.

Furthermore, the Magistrate suggests that there is "no evidence" that healthcare personnel were aware of Mr. Douglas' special accommodation. However, a copy of Mr. Douglas' Special Accommodation Notice – providing that Mr. Douglas was entitled to orthopedic shoes as a permanent accommodation – was in his health records. *See* ECF No. 53-1, PageID.285 (reflecting that the "white" copy of Mr. Douglas' permanent special accommodation was kept in Mr. Douglas' health record). But, even if MDOC health care services were for some reason unable to locate Mr. Douglas' permanent special accommodation within his medical records, that still would not excuse Defendants' failure to attempt to validate his special accommodation. Presented with a written, permanent special accommodation for orthopedic shoes, Defendants had a duty to call health care services to at least attempt to confirm.

Displaying their deliberate indifference to Mr. Douglas' disability, Defendants refused to even pick up the phone to make a simple call. *See R.K. ex rel J.K. v. Board of Education of Scott County, Kentucky,* 637 Fed. Appx. 922, 925 (6th Cir. 2016) (a party acts with deliberate indifference if it "disregards a known or obvious consequence of its actions, namely that its actions

16

will violate the plaintiff's federally-protected rights.")  Defendant Muzzin could have made that phone call at the outset and avoided the entire series of unfortunate events; Defendant Martin could have made that call when Mr. Douglas' returned from his visit and requested that his orthopedic shoes be returned; and Defendant Gobert could have resolved the issue by following MDOC policy and conducting an administrative hearing.  None of them did.  Again, as this Court correctly observed, a reasonable jury might conclude that a correctional officer "would at least perform a follow up inquiry."  *See* Order, ECF No. 151, PageID.983.

Finally, the Magistrate's suggestion that Mr. Douglas failed to present evidence that Defendants' actions were on account of Mr. Douglas' disability is wrong.  When the full picture is considered, and when the picture is viewed in light most favorable to Mr. Douglas, a reasonable trier of fact could most definitely conclude that Defendants' misconduct was on account of Mr. Douglas' disability.  Mr. Douglas told Defendants that he has a foot deformity requiring an accommodation of orthopedic shoes.  Mr. Douglas showed Defendants his written, permanent medical accommodation.  And Defendants not only disregarded this evidence of Mr. Douglas' disability and accommodation, but made no effort – not even an attempt at a simple phone call – to perform a follow up inquiry on the matter.  From this evidence, a reasonable trier of fact may certainly conclude that Defendants discriminated against Mr. Douglas on account of his disability.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Douglas respectfully requests that this Court decline to adopt the Magistrate's recommendation regarding the dismissal of his ADA/RA claims and enter an order denying Defendants' motion for summary judgment.

                                  Respectfully submitted,

                                  Varnum LLP
                                  Attorneys for Plaintiff

Date:  April 12, 2021          By:    /s/ *Gary J. Mouw*
                                          Gary J.  Mouw (P69236)
                                          Justin A. Allen (P84698)
                                          PO Box 352, Bridgewater Place
                                          Grand Rapids, MI 49501-0352
                                          (616) 336-6000
                                          gjmouw@varnumlaw.com
                                          jaallen@varnumlaw.com

17812300.1